**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Angie & Krzysztof Wielogosinski, | ) | Case No. 18 B 22666 |
| | ) | |
| Debtors. | ) | Honorable LaShonda A. Hunt |
| | ) | |
| | ) | |
| Christine Szafron, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 19 A 00018 |
| | ) | |
| v. | ) | |
| | ) | |
| Angie Wielogosinski, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This adversary complaint is before the court for ruling after trial. Plaintiff Christine Szafron alleges that defendant/debtor Angie Wielogosinski obtained an $80,000 loan from her through false representation and actual fraud, and so the debt is nondischargeable under 11 U.S.C. § 523(a)(2). Szafron further alleges that Wielogosinski should be denied a bankruptcy discharge for violating 11 U.S.C. § 727(a)(6) when she failed to comply with a prior court order to respond to overdue discovery requests. The court has considered the evidence presented and the arguments of the parties at the half-day Zoom trial. This decision constitutes the court's findings of fact and conclusions of law under Fed. R. Civ. P. 52(a), made applicable by Fed. R. Bankr. P. 7052. For the reasons that follow, the court finds that Szafron has not met her burden of proof on either claim; therefore, judgment will be entered in favor of Wielogosinski on all counts of the complaint.[1]

---

[1] Szafron also sought in Count I of the complaint to deny Wielogosinski a discharge under 11 U.S.C. § 727(a)(3). However, she stated at trial that claim was no longer being pursued.

**Background**

The facts are taken from the pleadings in the bankruptcy case and adversary proceeding,[2] pretrial stipulations, admitted trial exhibits, and the trial testimony of Szafron and Wielogosinski, the sole witnesses.[3]  The parties were friends whose families had a long personal history.  In early 2006, Wielogosinski was living in Florida in a home that she had been unsuccessfully trying to sell.  At some point, either during a telephone conversation or an in-person discussion, Wielogosinski told Szafron that she was buying a condo in Homer Glen, Illinois and had put down some earnest money but needed $80,000 more to finish the deal.  Szafron withdrew the funds from her personal home equity line of credit and loaned the money to Wielogosinski.

The parties memorialized their deal with a written promissory note.  (Trial Exhibit 3).  The Note, as admitted into evidence, provides that Wielogosinski[4] acknowledges she is borrowing $80,000 from Szafron "to be used towards purchase of my new residence in Homer Township, Illinois" and her "intention [is] to pay back the $80,000 in full within two months or at time of sale/closing (whichever comes first) of my home at 5233 Algarine, Zephyr Hills, Florida."  It was purportedly signed by "Angie Stekala Wielgosinski" before a notary public on March 20, 2006.  At trial, Wielogosinski agreed that she signed *a* note for the loan but expressed reservations about whether this exhibit was *the* note.  She suggested that Szafron had drafted this particular document

---

[2]  The court takes judicial notice of the dockets in the bankruptcy case and the adversary proceeding.  *See Inskeep v. Grosso (In re Fin. Partners),* 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989).

[3]  The Final Pretrial Order entered on January 22, 2021, ordered the parties to file a joint pretrial statement identifying stipulated and disputed facts, and to submit separate pretrial briefs with citations to legal authority in support of their claims and defenses.  (Adv. Dkt. 43).  Counsel for Szafron filed a pretrial statement on her behalf but then inexplicably failed to submit a pretrial brief.  Wielogosinski is proceeding *pro se* and did not participate in drafting a joint pretrial statement or file her own pretrial brief.

[4]  Several of the exhibits spell her last name as "Wielgosinski," specifically the promissory note and mortgage documents for the Homer Glen property.  However, every document in the bankruptcy case and adversary proceeding identifies her as Wielogosinski.  Since Wielogosinski has not challenged the different spellings, the court will presume that both are accurate.

and signed Wielogosinski's name, and the notary stamp was a forgery.[5]  Still, Wielogosinski did not dispute that she had previously signed *some* document evincing a loan of $80,000 from Szafron for a real estate purchase in Illinois that she agreed to potentially repay with money from the sale of her Florida property.

In April 2006, Wielogosinski and her husband bought the Homer Glen property for $314,990.  (Tr. Exs. 4-6).  They funded the purchase with a mortgage for $267,700.  (Tr. Ex. 7). Wielogosinski testified that she made monthly payments on the Szafron loan from April 2006 until April 2016 and gave Szafron $40,000 in June 2008 from the sale proceeds of her Florida property. Although her interrogatory response lists total repayments of $77,800, (Tr. Ex. 16), Wielogosinski clarified that the referenced ring allegedly worth $5,000 was given to Szafron's daughter as a gift. Wielogosinski said she stopped paying on the debt after Szafron hired a lawyer to sue her.  Szafron confirmed that Wielogosinski began making interest-only payments directly to the bank for her line of credit, albeit during a slightly different timeframe—October 2006 until July 2014 when a balloon payment became due.  Sometime thereafter, Szafron retained counsel to recover the loan balance from the Wielogosinskis.  In 2017, she obtained and recorded a judgment for $40,083 against their Homer Glen property.  (Tr. Ex. 4).

Wielogosinski and her husband filed a joint chapter 7 petition on August 10, 2018, listing Szafron as a creditor.  Szafron hired bankruptcy counsel, David Lloyd, and sought leave to conduct a Rule 2004 examination of Wielogosinski about the loan, proceeds, and repayment history.  That

---

[5] The parties presented conflicting stories at trial about the origin of the Note.  Szafron testified that Wielogosinski unexpectedly showed up at her house with the Note already signed and notarized, claiming that she had put down $30,000 in earnest money, could not sell her Florida home, and would repay the debt within 2 months. Wielogosinski, on the other hand, professed that after she told Szafron about putting down $5,000 in earnest money, Szafron agreed to give her $80,000, and subsequently drafted the Note and took her to the currency exchange to sign and notarize it.  Wielogosinski pointed to the misidentified Florida address as proof that she would not have written this document.  (Compare Tr. Ex. 3 (Zephyr Hills, Florida) with Tr. Ex. 16 (Wesley Chapel, Florida)).

motion was granted on September 14, 2018. (Tr. Ex. 9).   Szafron issued interrogatories and document requests to Wielogosinski through her bankruptcy attorney, Rayed Yasin. (Tr. Exs. 10, 11). Although those responses were due October 20, 2018, nothing was tendered. Lloyd wrote to Yasin inquiring about the overdue discovery. (Tr. Exs. 12, 13). Lloyd eventually filed a motion to compel discovery that was granted on December 7, 2018, giving Wielogosinski two weeks to respond to the outstanding requests. (Tr. Exs. 14, 15).[6]

Yasin finally sent Lloyd a one-page document containing interrogatory responses signed by Wielogosinski, on January 11, 2019. (Tr. Ex. 16). A few days later, Szafron timely initiated an adversary proceeding objecting to Wielogosinski's discharge and seeking a determination about the dischargeability of the judgment debt.   The complaint raised three grounds for relief.  Counts I and II sought to deny Wielogosinski a discharge based on her failure to fully respond to the Rule 2004 discovery requests.  Count I alleged a violation of 11 U.S.C. § 727(a)(3) for concealing or destroying evidence or disregarding her duty to preserve information about her financial condition and business transactions.  Count II alleged a violation of 11 U.S.C. § 727(a)(6) for refusing to obey a lawful court order.   Count III challenged the dischargeability of the judgment debt under 11 U.S.C. § 523(a)(2), alleging Wielogosinski made false representations about how the proceeds would be used and her intent to repay the debt within two months in order to induce Szafron to agree to the loan.

Szafron abandoned count I at trial. *See n. 1*, *supra*.  With respect to the remaining claims, Wielogosinski averred that she had to pay $37,000 directly to the builder for custom upgrades on her unit that were not included in the purchase price. She then used the remaining $43,000 towards the down payment.  Furthermore, Wielogosinski pointed to the $40,000 lump-sum she gave

---

[6] The order was entered by Bankruptcy Judge Pamela S. Hollis, who has since retired from active service. All of her pending adversary proceedings were transferred to the current presiding judge in January 2020.

4

Szafron from the Florida sale proceeds and her consistent monthly payments for ten years as evidence of her intent to repay.  Finally, Wielogosinski asserted she kept all paperwork relating to the condo purchase, the "real" promissory note, and payments on the loan, in a book that was stolen from her house.  She accused Szafron of taking the documents during a visit.  That, Wielogosinski said, is the reason she could not produce any responsive documents.

## Jurisdiction

The court has jurisdiction over this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) and (K).

## Discussion

The goal of the bankruptcy process is to give the "honest but unfortunate debtor" a fresh start.  *Marrama v. Citizens Bank of Massachusetts*, 127 S. Ct. 1105, 1107 (2007).  As such, objections to discharge will be construed strictly against the opposing party and in favor of the debtor.  *See Grochocinski v. Eckert (In re Eckert)*, 375 B.R. 474, 478 (Bankr. N.D. Ill. 2007).  Debts are presumed dischargeable and objecting creditors bear the burden of demonstrating nondischargeability.  *Bank of Commerce & Trust Co. v. Strauss (In re Strauss)*, 523 B.R. 614, 625 (Bankr. N.D. Ill. 2014).  The proper burden of proof for establishing that the discharge should not be given or that a debt is excepted from discharge is preponderance of the evidence.  *Kontos v. Manevska (In re Manevska),* 587 B.R. 517, 529 (Bankr. N.D. Ill. 2018); *Strauss*, 523 B.R. at 625.  Szafron did not meet her burden here.

### A.  Denial of Discharge for Refusing to Obey a Court Order – Section 727(a)(6)

Section 727(a)(6) provides that a court shall grant the debtor a discharge unless, "[t]he debtor has refused, in the case—to obey any lawful order of the court, other than an order to

respond to a material question or to testify." 11 U.S.C. § 727(a)(6)(A). Szafron argues that Wielogosinski failed to comply with the court's order compelling her to respond to interrogatories and to produce responsive documents pursuant to requests issued under Fed. R. Bankr. P. 2004, by December 21, 2018. That is an accurate statement. Wielogosinski did not tender signed interrogatory responses until January 2019, three weeks after the deadline, and she never produced any documents. Her only explanation at trial was that the records were no longer in her house and must have been stolen, possibly by Szafron.

This court has discretion "to determine if a violation of a court's order is so severe as to require denial of discharge." *Manevska*, 587 B.R. at 540. A movant seeking such extraordinary relief "has the burden to prove a debtor 'refused' to obey a lawful order of the court." *Eckert*, 375 B.R. at 480. Mere failure to obey resulting from inadvertence, mistake, or inability to comply, without more, is insufficient. *Id.* Indeed, the statute requires a "refusal," which indicates "some degree of willfulness on the part of the debtor." *Id.*

Here, at most, Szafron has shown that Wielogosinski likely knew about and received the court order—the docket reflects electronic service on her bankruptcy counsel only—but still failed to comply with its terms. True, Wielogosinski has offered no explanation for her late interrogatory response and a far-fetched reason for the lack of documents, but that is still not a basis for this court to deny her a discharge. The interrogatories and document requests were answered, albeit not to Szafron's satisfaction. In response, Szafron could have pursued contempt proceedings in the bankruptcy case. But once she initiated an adversary proceeding a few days after finally receiving some response, any remaining issues should have been addressed through the robust discovery process afforded to her under Fed. R. Bankr. P. 7026 through 7037. For nearly two

6

years, this matter was repeatedly continued while the parties engaged in discovery.[7]  That was

Szafron's opportunity to build a record of "intentional misconduct" by Wielogosinski to support a

section 727(a)(6)(A) claim.  Whether Szafron issued additional interrogatories or production

requests, deposed Wielogosinski about any defenses, including the strange stolen documents

allegation, or tried to obtain admissions to bolster her claims, is unclear.  Certainly, none of that

information was offered at the trial.

Denying a discharge is appropriate in cases where debtors engage in a pattern of openly

disparaging and disregarding orders from the court.  *See e.g.*, *Eckert*, 375 B.R. at 480-81 (pointing

to debtor's repeated failure to appear for his deposition, produce requested documents in full,

answer material non-privileged questions, pay sanctions imposed by the court for misconduct, and

comply with the court's Final Pretrial Order, as grounds for revocation of a discharge).  What the

evidence establishes here, though, is more of a "simple discovery dispute" that fails to rise to the

level of "obstruction or willful contempt."  *Compare Manevska*, 587 B.R. at 540-41 (denying relief

under section 727(a)(6)(A) where the defendant failed to provide bank records in response to a

Rule 2004 subpoena).   That is not enough to demonstrate a refusal to comply.  Accordingly, the

court denies the relief sought in count II of the complaint.

### B.  Objection to Dischargeability Based on Fraud – Section 523(a)(2)

To prove "actual fraud" or a "false representation" for purposes of section 523(a)(2)(A),

Szafron must show that Wielogosinski was motivated by an intent to deceive.  *See 6050 Grant,*

*LLC v. Hanson (In re Hanson)*, 437 B.R. 322, 327 (Bankr. N.D. Ill. 2010) ("At the heart of the

exception to discharge under any of the prongs of § 523(a)(2)(A) is the element of intent."). The

focus is on "the debtor's subjective intention at the time of the representations or other purportedly

---

[7]  Wielogosinski was represented in the adversary proceedings by experienced bankruptcy counsel until
December 2020 when her attorney was granted leave to withdraw without objection.

fraudulent conduct." *Sullivan v. Glenn, et al. (In re Glenn)*, 502 B.R. 516, 532 (Bankr. N.D. Ill. 2013). Furthermore, intent to deceive can be established through direct evidence or inference. *Muhammad v. Sneed (In re Sneed)*, 543 B.R. 848, 862 (Bankr. N.D. Ill. 2015). Because direct proof is rarely available, fraudulent intent "may be inferred when the facts and circumstances present a picture of deceptive conduct on the debtor's part." *Glenn*, 502 B.R. at 532 (internal quotations omitted).

Szafron asserts that Wielogosinski made two false promises to convince her to agree to the $80,000 loan: (1) that the funds would be used towards the purchase of the Homer Glen property, and (2) that full repayment would be made by the earlier of Wielogosinski selling the Florida property or two months. The parties concede that in March 2006, they executed a Note for the agreed loan amount and payment terms. Now on opposite sides of the fence, they dispute exactly how the Note was finalized fifteen years ago. But neither of their recollections strike the court as entirely credible. Szafron claims that Wielogosinski showed up on her doorstep out of the blue with the signed Note for an $80,000 loan to be repaid in two months at most, and she, a struggling widow, immediately acquiesced to help a friend in need. And Wielogosinski accuses Szafron of not only offering up this large sum of money and drafting the Note but also forging her signature and falsifying the notary stamp. Resolving the dispute over how the Note transpired is not necessary, though, as the relevant inquiry is whether Wielogosinski intentionally duped Szafron into making this deal. The evidence in the record does not support an inference, let alone a finding, of deceptive conduct.

Wielogosinski testified at trial that she used part of the loan proceeds—$37,000—to pay the builder pre-closing for custom upgrades to her unit. The rest—$43,000—presumably covered the down payment since the difference between the purchase price and mortgage amount is

8

$47,290 and Wielogosinski said she had already tendered $5,000 in earnest money. Szafron understandably questions the truthfulness of Wielogosinski's story about such a significant extra expense being assessed outside of the purchase price. Specifically, she points to the lack of documentation to corroborate the payment. Szafron may indeed be correct that Wielogosinski is lying today about how she spent the proceeds. But that does not mean she had no intention in 2006 of acting as stated in the Note. In fact, Wielogosinski's defense is that she did exactly what she said, which is used the loan "towards purchase of [her] new residence in Homer Township, Illinois." Szafron must offer more than mere speculation about a bad motive to satisfy her burden.

Similarly, the other contention about a false promise to repay the full loan amount within no more than two months falls short. The key question for a nondischargeability analysis is what did Wielogosinski intend. *See Reeves v. Davis (In re Davis)*, 638 F.3d 549, 554 (7th Cir. 2011). Her trial testimony on this subject was not entirely clear. On the one hand, she mentioned needing a loan from Szafron because the housing market in Florida was soft and she could not sell her home there quickly enough to fund the Illinois purchase. On the other hand, she agreed to repayment in less than two months—and the Note provides the same—presumably because she expected the Florida property to sell quickly. Unfortunately, the sale took two years, until June 2008, and even then, Wielogosinski repaid Szafron only $40,000—half the loan amount. Again, Szafron tries to make her case by focusing on Wielogosinski's subsequent inability to fulfill the Note repayment terms, as opposed to her intentions when the deal was made. Promises to pay later do not constitute a false representation unless "at the time the proponent made it, he knew full well that he had no intention of performing the future act." *Levine v. Ward (In re Ward)*, 425 B.R. 507, 516 (Bankr. E.D. Wis. 2010). Szafron presented no such proof of any intent to deceive in March 2006.

Moreover, Wielogosinski made monthly interest payments towards the actual loan for eight years, according to Szafron, or ten years, according to Wielogosinski.  Either way, she consistently made efforts to chip away at the loan balance, and those payments ceased only after Szafron sued her in state court to collect the remaining balance.  Conduct that reflects a good faith attempt to perform "generally suggests a lack of fraudulent intent." *Parkway Bank & Trust Co. v. Casali (In re Casali)*, 547 B.R. 263, 271 (Bankr. N.D. Ill. 2016).  While it is undisputed that Wielogosinski failed to pay Szafron back within two months, the circumstances here do not indicate any intent in May 2006 not to fulfill her promise of repayment in full.  Consequently, the court denies the relief sought in count III of the complaint.

## Conclusion

For the foregoing reasons, judgment will be entered in favor of defendant Angie Wielogosinski on the complaint and against plaintiff Christine Szafron.  A separate judgment will be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

Dated: March 24, 2021                          ENTER:

_____
Hon. LaShonda A. Hunt
United States Bankruptcy Judge